**Richard Dale MARTIN, doing business as Midwest Aviation Enterprises, Inc.,**
**Appellant,**

**v.**

**UNITED STATES of America,**
**Appellee.**

**No. 10024.**

United States Court of Appeals
Tenth Circuit.

Dec. 6, 1968.

Rehearing Denied Feb. 4, 1969.

Vincent A. Ross, Cheyenne, Wyo., for appellant.

Leroy V. Amen, Asst. U. S. Atty., Cheyenne, Wyo., (Robert N. Chaffin, U. S. Atty., Cheyenne, Wyo., with him on the brief) for appellee.

Before LEWIS, SETH and HICKEY, Circuit Judges.

HICKEY, Circuit Judge.

Richard Dale Martin, the appellant, has taken a direct appeal from a mail fraud conviction under 18 U.S.C. § 1341. Martin's case was tried to a jury in the United States District Court for the District of Wyoming. The issues presented on appeal are: Did the latitude permitted the government concerning a previous felony conviction exceed the scope of cross-examination, and whether the court committed reversible error in its instructions to the jury.

Martin arrived in Cheyenne, Wyoming, in July of 1964, to organize a business named Midwest Aviation Enterprises, Inc. The proposed business was to air freight seafood from the Pacific Northwest to Wyoming and adjacent states. Martin placed, or had placed, a classified advertisement in a Colorado newspaper, responses to which were to be mailed to Cheyenne, Wyoming.[1] Martin's prosecution was based upon his knowingly taking or receiving from the Cheyenne Post Office two letters from persons responding to the classified advertisements.

Martin testified in his own case in chief and admitted a 1952 felony conviction.

Prior to cross-examination of Martin, the prosecution apprised the court and Martin's attorney of its desire to delve into the nature of the 1952 felony conviction; the court granted permission to do so.[2] The court ruled that Martin's

---

1. The advertisement stated: "PILOTS MECHANICS and ambitious people interested in fast-growing field of aviation, are urgently and immediately needed as working partners in a newly organized air freight, air line. Write giving complete resume. Include photo and indicate interest to Col. F. T. Barron, P. O. Box 2127, Airport Station, Cheyenne, Wyo." The Denver Post, July 18, 22, 23, 1964, Classified Section. Record at 55.

2. The following colloquy took place, out of the hearing of the jury, between the court, Mr. Ross, Martin's attorney, and Mr. Amen, prosecution's attorney:
"MR. ROSS: Maybe we ought to have this in chambers if there is going to be some talk about his criminal record.
MR. AMEN: That is what I am going to talk about.
THE COURT: What is it that you want?
MR. AMEN: The defendant has testified that he was convicted of a felony in 1952. The rap sheets show a conviction in Colorado, 1953, January 2nd, for false pretenses. Now, this has elements same or similar to that in the case here involved. I would like to go into what the conviction was for.
THE COURT: You are permitted to—
MR. ROSS: I don't think he is allowed to go into it, Your Honor.
THE COURT: A similar offense is admissible to show intent.
MR. ROSS: It is not a similar offense.
MR. AMEN: False pretense?
MR. ROSS: It is not similar to this offense, Your Honor.
THE COURT: What is it then?
MR. ROSS: It was a mortgage involved on a car.
THE COURT: A what?
MR. ROSS: A mortgage involved with a car. It wasn't a false pretense deal at all.
MR. AMEN: He could always explain it, if he feels that it is not the same.
THE COURT: You can ask him if it was false pretense.
MR. AMEN: That is what I wanted to ask him.
MR. ROSS: The only way you can impeach him is to show the record of the FBI, and I am not going to stand still for that. You can't impeach him.
THE COURT: He can explain it. You have opened up the door that he was convicted of a felony. But if it is a similar offense it is clearly admissible to what the offense was.
MR. ROSS: Yes, but it is not a similar offense.
THE COURT: Well, it says 'false pretense.'
MR. ROSS: We don't care what it says.
THE COURT: We will find out when you ask him. He can deny it." Record, Vol. 3, at 500-01.

attorney had opened up the matter on direct examination, and that since the prior offense may have been similar to the one for which Martin was being tried, testimony concerning it was relevant to the issue of intent and hence admissible. During cross-examination an objection by defense counsel occasioned a ruling by the trial court making known to the jury the reason for allowing cross-examination on the matter.[3]

Relying on Tandberg-Hanssen v. United States, 284 F.2d 331, 333 (10th Cir. 1960), Martin contends that his prior felony conviction was too remote and unrelated to the crime charged to be admissible. Martin reads *Tandberg-Hanssen* too broadly; the case deals with the introduction of prior crimes by the prosecution, and not the permissible scope of the prosecution's cross-examination after the defendant has voluntarily opened up his prior criminal record by his own testimony.

The question presented by Martin's appeal, is in fact, very narrow; i. e. what is the permissible scope of the prosecution's cross-examination into prior felony convictions of the accused, when the accused has testified in his own case in chief, and has admitted a previous felony conviction? This question involves two conflicting legal policies, i. e. the Fifth Amendment right against self-incrimination versus the testing by cross-examination of witnesses concerning details of testimony introduced during a trial.

The underlying answer to this question has been settled by the Supreme Court. "[The] correct statement of the law [is] * * * that by her [the accused's] direct testimony she had opened herself to cross-examination on the matters relevantly raised by that testimony."[4] The narrower question deals with the limits of the *Brown* holding as it applies to an accused's testimony about previous felony convictions.

■■ When Martin testified on direct examination and opened up the topic of his previous felony conviction, he assumed the risk that some of the details of that conviction would be "matters relevantly raised," and subject to elaboration by cross-examination. This court does not believe, however, that the prosecution may be given unlicensed latitude in cross-examining the accused about a prior felony for two reasons. First is the unnecessary and unwarranted delay in the trial and second is the policy against introducing extraneous and possibly prejudicial or inflammatory testimony concerning matters unrelated to

---

**3.** The trial court's ruling appeared in the following context:

Q. [By Mr. Amen] Mr. Martin, on direct examination you testified that you had previously been convicted of a felony. Is it not true that the felony of which you were convicted was obtaining money under false pretenses?

MR. ROSS: To which we object, Your Honor, and move for a mistrial—

THE COURT: Overruled.

MR. ROSS: —because he was charged before on 'this matter of the false pretense—

THE COURT: Overruled. If it is a similar offense it is admissible as to intent.

MR. ROSS: We state that it is not a similar offense, Your Honor.

THE COURT: I have already ruled.

Q. [By Mr. Amen] Please answer the question.

A. It was, I guess you might say that.

MR. ROSS: Your Honor, we object. I don't think the witness has been instructed on how to respond to a question like that. It is purely intended to prejudice the jury. And when he answered, I think you might say, that he didn't know what he was talking about.

THE COURT: No, there is no intent to prejudice the jury.

MR. ROSS: There certaintly is. I don't think this should be brought out.

THE COURT: Wait until I get through. You asked him if he had been convicted of a felony. Then Mr. Amen has a right to ask him what it was, if it is a similar offense. Beyond that I won't admit anything. But he has a right to ask him if it is a similar offense, because that goes to the question of intent." Record at 502, 503.

**4.** Brown v. United States, 356 U.S. 148, 157, 78 S.Ct. 622, 628, 2 L.Ed.2d 589 (1958).

the present trial. The proper rule was aptly stated in a recent Fourth Circuit opinion:

"We do not question the well-settled rule that a defendant who voluntarily offers himself as a witness and testifies in his own behalf subjects himself to legitimate and pertinent cross-examination to test his veracity and credibility. Cross-examination of an accused as to collateral matters should properly be limited to an effort to discredit him as a witness, and the limit is exceeded when the questions are not useful for that purpose and the necessary result, and perhaps the purpose, is merely to prejudice the jury against the defendant." [5]

The questions which the prosecution should be permitted as a minimum right in the circumstances of this case are, what was the felony and when was it committed? These questions are within the ambit of "matters relevantly raised by"—"direct testimony." [6] The prosecution's cross-examination did not exceed these limits in the instant case. Whether or not broader cross-examination is permissible is for the discretion of the trial judge.[7]

The remaining part of this opinion concerns the second issue on appeal relating to the giving of jury instructions.

Martin contends that the trial court failed to comply with Rule 30 of the Federal Rules of Criminal Procedure by not providing the defense with copies of the jury instructions before charging the jury and as a result he was deprived of the opportunity to evaluate and properly object to the instructions. The record shows that defense counsel filed no requested instructions with the court. Instructions tendered by the prosecution do appear in the record.

Counsel misreads Rule 30. The trial court did not have any greater obligation than to inform the respective counsel of his proposed action upon each attorney's requested jury instructions. This court in construing Rule 51 of the Federal Rules of Civil Procedure, the civil counterpart of Rule 30, has said the purpose of requiring the court to so inform counsel "is so that counsel may argue intelligently, and is not to provide an opportunity to take exceptions. The court may inform counsel in general terms suitable to this purpose, and need not, and we should think should not, do so in a sentence-by-sentence outline." [8] Obviously then the trial judge does not have an obligation to supply counsel with copies of the proposed jury instructions.

The court instructed the jury that it was unnecessary for the government to prove beyond a reasonable doubt each allegation of the fifteen paragraph indictment, but that it was necessary to prove beyond a reasonable doubt allegations comprising essential elements of the crime. The court then went on to define the essential elements. Martin contends that this charge confused and mislead the jury. Although Fed.R.Crim. P. 30 was not complied with, we hold that the court's instruction correctly stated the law.[9] The court held in *Weber* that an instruction which requires all of the elements of an indictment to be proved beyond a reasonable doubt would in fact mislead the jury.

---

5. United States v. Pennix, 313 F.2d 524, 528 (4th Cir. 1963).

6. Brown v. United States, 356 U.S. 148, 157, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958).

7. Maxfield v. United States, 360 F.2d 97, 102 (10th Cir. 1966); Abeyta v. United States, 368 F.2d 544, 545 (10th Cir. 1966). Nothing in this opinion is intended to express this court's views concerning the latitude permitted the prosecution on cross-examination to inquire into a defendant's prior criminal record

if the defendant has not opened up this question when presenting his case in chief. For a thorough treatment of that question, see King v. United States, 402 F. 2d 289 (10th Cir. 1968).

8. Dunn v. St. Louis-San Francisco Ry. Co., 370 F.2d 681, 683 (10th Cir. 1966).

9. Weber v. United States, 80 F.2d 687, 691 (10th Cir. 1935). Accord, Todorow v. United States, 173 F.2d 439 (9th Cir. 1949).

The trial court's reference to the newspaper advertisement stated that pilots and mechanics were wanted, but omitted the words "as working partners." Martin contends this resulted in a slanted instruction. The members of the jury had the opportunity to examine the advertisement during their deliberation and could see its contents for themselves.

Finally Martin objects for the first time to certain conclusionary language of the trial court which, it is asserted, invaded the province of the jury.[10] Considered in the context of the whole charge, any error which occurred was harmless. We think the instructions fairly stated the law and did not cause prejudice to the accused.

Affirmed.

Thornberry, Circuit Judge, dissented.

---

10. The instruction consisted of the following: "I, therefore, instruct you that you may consider Defendant's omissions, concealments and suppresion [sic] of facts, which would materially change or alter the facts actually stated in deciding whether the Defendant devised a scheme to defraud." Record, Vol. 3 at 617.