**STATE of Maine**

v.

**Stanley PINKHAM.**

Supreme Judicial Court of Maine.

March 28, 1978.

David M. Cox, Dist. Atty., John A. Woodcock, Jr., Asst. Dist. Atty. (orally), Bangor, for plaintiff.

Marshall A. Stern (orally), Bangor, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ.

POMEROY, Justice.

We criticized 16 M.R.S.A. § 56,[1] in *State v. Toppi*, Me., 275 A.2d 805 (1971), and we said in *State v. Peaslee*, Me., 287 A.2d 588, 591, n. 2, (1972)

> "we suggest the time has come for a re-evaluation of this statute by the Legislature, particularly insofar as it permits evidence of conviction for felonies which by their nature have no tendency whatsoever to demonstrate lack of veracity."

In 1973, the Legislature by enacting 4 M.R.S.A. § 9–A provided

---

1. The Legislature never *expressly repealed* 16 M.R.S.A. § 56 (and, in fact, amended the statute by Chapter 564, Section 77, 1977). We note 4 M.R.S.A. § 9–A provides that

> "After the effective date of said rules as promulgated or amended, *all laws in conflict therewith shall be of no further force or effect.*" (emphasis supplied)

16 M.R.S.A. § 56 is a "law[s] in conflict therewith" (Rule 609, Maine Rules of Evidence) in many material respects.

To the extent that conflicts exist, we interpret 16 M.R.S.A. § 56 as of "no further force or effect", and the subject matter of 16 M.R.S.A. § 56 is now controlled by Rule 609, Maine Rules of Evidence.

"The Supreme Judicial Court shall have the power and authority[2] to prescribe, repeal, add to, amend or modify rules of evidence with respect to any and all civil actions or other proceedings, and any and all proceedings in criminal cases before complaint justices, District Courts, probate courts, Superior Courts and the Supreme Judicial Court.

Such rules shall take effect on such date not less than 6 months after their promulgation as the Supreme Judicial Court may set. After their promulgation, the Supreme Judicial Court may repeal, amend, modify or add to such rules from time to time without a waiting period. After the effective date of said rules as promulgated or amended, all laws in conflict therewith shall be of no further force or effect."

Thereafter, it came about this Court had opportunity and occasion to make the changes in the law relating to the use of prior convictions for impeachment purposes, which we had in mind when we made the recommendation to the Legislature in *Peaslee.*

In 1976 by Rule 609, Maine Rules of Evidence, we imposed substantial limitations on the use of prior convictions for impeachment purposes and specifically made use of prior convictions discretionary with the presiding justice. We did this by adopting in Rule 609(a) a provision that

"[i]n either case admissibility shall depend upon a determination by the court that the probative value of this evidence outweighs the prejudicial effect to the defendant."

This is the first occasion we have had to consider and discuss Rule 609, Maine Rules of Evidence. The occasion arises in the context of an appeal from a judgment entered on a jury verdict that the appellant had violated 17–A M.R.S.A. § 252 (rape), a class A crime.

We sustain the appeal and order a new trial.

The record indicates appellant met the prosecutrix in a barroom in Bangor. It was the prosecutrix' first night in service as a cocktail waitress. As the cocktail lounge was closing, the prosecutrix asked the appellant for a ride home. He agreed. Subsequently they did in fact return to her home where she told him her two roommates were sleeping. This reason was assigned as the reason she did not permit him to go up to her apartment. Thereafter he continued to drive his automobile with the prosecutrix until he stopped in a sparsely settled area of Orrington, Maine, some four or five miles from her home. It was there the alleged rape occurred.

Eventually she returned to her home after stopping at his home. While at his home she remained in the car while he went into his house and wrote a check for $20 which he presented her upon his return to his automobile. Shortly after she returned to her home she notified the police, alleging that she had been raped. The check for $20 which she had received from the appellant she delivered to the police officer as soon as he came to her home.

During the trial, a police officer was asked to testify what appellant had said to him just before his arrest. The appellant's story as related to the officer was that there had been no "rape", but rather the act between the parties was consensual.

At the conclusion of the State's case, the appellant, through his counsel, addressed the Court as follows:

2. When it considered adopting Maine Rules of Evidence, the Court continued the practice it had begun when it enacted the Maine Rules of Civil Procedure in 1959 of seeking legislative authorization to promulgate such rules, (P.L. 1957, c. 15). However, we *reaffirm* that the Court has inherent power "to establish rules for the orderly conduct of business before it." *Fox v. Conway Fire Insurance Co.,* 53 Me. 107, 110 (1865); *Parker v. Hohman,* Me., 250 A.2d 698, 700 (1969). *See also,* Annot., 110 A.L.R. 22 (1937); Annot., 158 A.L.R. 705, 706 (1945) and cases cited therein; Joiner and Miller, *Rules of Practice and Procedure: A Study of Judicial Rule Making,* 55 Mich.L.Rev. 623 (1957). The Court considers that when it exercises its inherent rule-making power, consultation *with* and approval *of* the Legislature is advisable *as a matter of policy.*

"Your Honor, in regards to my case, it's quite essential that I place my client, Stanley Pinkham, on the stand to tell his story as to how these events occurred on November 22nd. If Mr. Pinkham should take the stand, Brother Cox for the Prosecution, could in fact bring up the fact that Mr. Pinkham has had a prior record. While the Court would instruct that the use of this record is solely for the attacking of the credibility of the witness and for no other reason, I feel that because of the nature of the record, that it would, in fact, be prejudicial; and so prejudicial, in fact, that it would far outweigh any probative value which might be presented. And for that reason, I would ask that the Court allow the Defendant to testify without the submission of his record to the triers of the fact, the Jury.

THE COURT: Now, let the record clearly establish that the Jury is not in the courtroom at this time. In response to your request, Counsel, I think you're entitled to a ruling at this time, so that you may make an appropriate considered judgment as to whether to place the Defendant on the witness stand. Under Rule 609 on admissibility, does depend upon a determination by the Court that the probative value of the evidence of two prior rape convictions outweighs the prejudicial effect to the Defendant. *Were the convictions of some other crime, I would rule that the probative value does not outweigh the prejudicial effect. It seems to the Court, that where it is the same type of offense upon which this Defendant would be testifying, that— that they're pretty much in balance, that the probative value at least balances the prejudicial effect.* And so I would permit the State on cross examination to inquire, if it has sufficient foundation, under *State versus Toppi* to present such evidence that there were convictions for rape on prior occasions. So you may make your judgment at this time based upon that ruling." (emphasis supplied)

Following this colloquy the appellant elected not to take the witness stand.

The jurors were instructed that

"no inference should be drawn from the fact that he did not testify in this case. This is not evidence of guilt. He has an absolute right not to testify, since the State must prove his guilt beyond a reasonable doubt. He does not have to prove his innocence."

Although objections were made to some of the Court's instructions and although other errors are claimed, we find it unnecessary to discuss such claims of error other than the ruling that if the defendant took the stand, his prior convictions could be used for his impeachment.

When he said,

"Were the convictions of some other crime, I would rule that the probative value does not outweigh the prejudicial effect. It seems to the Court, that where it is the same type of offense upon which this Defendant would be testifying, that—that they're pretty much in balance, that the probative value at least balances the prejudicial effect",

it is clear the Court misconstrued Rule 609.

■ Rule 609 makes it abundantly clear when evidence of prior conviction for crime is offered for *impeachment* purposes, the Court must balance the probative value of the evidence, *as establishing lack of veracity*, against its "prejudicial effect *to the defendant*". (emphasis supplied).[3]

■ It is likewise clear that unless the presiding justice determines that the probative value of the evidence *outweighs* the prejudicial effect to the defendant the evidence should not be admitted.

In the instant case the presiding justice made no such determination. Rather he found and announced that

"they're pretty much in balance, that the probative value at least balances the prejudicial effect".

---

**3.** *See* Rule 404(b), Maine Rules of Evidence and R. Field and P. Murray, *Maine Evidence,* 69–71 (1976).

■ It is noted that the admissibility of the evidence of prior conviction in this case depended upon a determination by the Court that the probative value of the evidence or prior conviction *as bearing on the appellant's veracity*, outweighs the prejudicial effect to the defendant. That rape is a reprehensible crime and one punishable by imprisonment for one year or more, does not *itself* determine that it is usable as impeachment evidence.

■ Rule 609, *Maine Rules of Evidence*, by its terms, establishes that in any case to be usable as impeachment evidence, the prior conviction must be either (1) of a crime punishable by death or imprisonment of one year or more; or (2) involve dishonesty or false statement.

Even though the prior conviction was of a crime which was within one of these two categories, before it could be used as impeaching evidence, the further determination had to be made that "the probative value of this evidence outweighs the prejudicial effect to the defendant."

The alleged prior convictions were for rape. Rape was the exact crime for which the defendant was on trial at the time the Court made its ruling.

We note that in R. Field and P. Murray, *Maine Evidence*, 149 (1976), the authors say

"When the conviction was for a crime so similar to the one presently charged that the jury might well conclude that the accused was guilty of both, it might be excluded because the prejudicial effect was unduly great."

*Gordon v. United States*, 127 U.S.App.D.C. 343, 347, 383 F.2d 936, 940 (1967) is cited as authority for this comment.

We are aware that in *Gordon*, the Court relied substantially on the so-called *Luck* Rule as promulgated in *Luck v. United States*, 121 U.S.App.D.C. 151, 348 F.2d 763 (1965). We are likewise aware that in enacting the District of Columbia Court Reform and Criminal Procedure Act of 1970, Congress adopted a recommendation of the Advisory Committee of the Judicial Conference of the United States which eliminated the authority of the trial judge to limit or prohibit impeachment by evidence of prior convictions. The Advisory Committee and the Congress found the "*Luck*" Rule inconsistent with the practice in the states, calling it a doctrine which "enables an accused to appear as a person whose character entitles him to credence when the facts [sic] is to the contrary." *See Taylor v. United States*, 280 A.2d 79, 81 (D.C.Ct.App.1971).

Nevertheless, when we adopted Rule 609, Maine Rules of Evidence, we expressly made admissibility of prior convictions subject to the discretion of the Court and subject to the limitations set forth in 609(a)(1) and (2) and 609(b) and 609(c). It follows, the logic of the D.C. Circuit Court in *Gordon* is in no way diminished by the action of Congress, especially in a jurisdiction like ours which has vested discretion expressly in the trial judge to admit or not to admit such evidence.

In *Gordon*, the Court speaking through Judge Burger (later Chief Justice Burger) said

"A special and even more difficult problem arises when the prior conviction is for the same or substantially the same conduct for which the accused is on trial. Where multiple convictions of various kinds can be shown, strong reasons arise for excluding those which are for the same crime because of the inevitable pressure on lay jurors to believe that 'if he did it before he probably did so this time.' As a general guide, those convictions which are for the same crime should be admitted sparingly; . . ." *Id.* at 940.

■ The presiding justice made it clear in the record that his *in limine* ruling on the admissibility of the prior rape convictions was based on a misinterpretation of Rule 609, Maine Rules of Evidence. It is apparent that the justice below mistakenly believed that the convictions were probative because of their *substantive* impact. We so conclude because he said

"*Were the convictions of some other kind, I would rule that the probative value does not outweigh the prejudicial effect.*" (emphasis supplied).

There were lesser offenses than rape (a class A offense) which the jury had a right to consider under the evidence in this case. This being so, it became very important that the appellant be allowed to testify as to his version of the events testified to by the prosecutrix. As the *Gordon* Court said,

"One important consideration is what the effect will be if the defendant does not testify out of fear of being prejudiced because of impeachment by prior convictions. Even though a judge might find that the prior convictions are relevant to credibility and the risk of prejudice to the defendant does not warrant their exclusion, he may nevertheless conclude that it is more important that the jury have the benefit of the defendant's version of the case than to have the defendant remain silent out of fear of impeachment." *Id.* at 940–41.

The presiding justice committed reversible error in ruling *in limine* as he did.

In the framework of the facts of this case such error was highly prejudicial to the appellant.

Only a new trial can prevent injustice resulting from such error.

The entry must be:

Appeal sustained.

New trial ordered.

DELAHANTY, J., did not sit.