STATE OF MAINE                                    SUPERIOR COURT
KENNEBEC, SS.                                     CIVIL ACTION
                                                  DOCKET NO. AP-09-18
                                                  DH M-KEN-12 2''...

DENISE NADEAU, D.D.S.,

        Petitioner

v.                                                **ORDER**

MAINE BOARD OF DENTAL EXAMINERS,

        Respondent

Before the court is petitioner Denise Nadeau, D.D.S.'s petition for review of a final agency action of March 6, 2009, pursuant to 5 M.R.S.A. § 11001 and M.R. Civ. P. 80C.

In a decision dated July 13, 2007, the Maine Board of Dental Examiners found that the petitioner violated certain provisions of the Maine Dental Practice Act and imposed sanctions on the petitioner. In addition to the five-year probationary period and sanctions, the Board assessed costs of $18,447.43. A petition for judicial review was brought by Dr. Nadeau, *see* KENSC-AP-2007-55 (Me. Super. Ct., Ken. Cty., June 24, 2008) (Jabar, J.)). In the Superior Court decision, the Board's decision was partially affirmed but the matter was remanded to the Board to, among other things, "hold a hearing on costs, exercising its discretion with regard to reasonable costs based on petitioner's ability to pay." *Id.*

The Board held hearings on August 15, 2008, and February 6, 2009, on the matters remanded by the court. At the August meeting, the Board approved an offer of employment extended to petitioner by Dr. Desjardins-King of Twin City Dental in Bangor. The Board concluded that the total cost of the proceedings was $31,581.97.

That figure was then reduced to $24,751.06 to account for the fees incurred by the Board's investigator, the transcription fees of the hearings, and costs incurred by the Board members for time, travel, and lodging. The Board then voted to further reduce the costs to $18,699.21, voting to split the transcription costs with petitioner. The Board then voted to defer making a decision regarding petitioner's ability to pay until further information could be obtained regarding her income with Dr. Desjardins-King.

At the February meeting, the Board took evidence regarding petitioner's ability to pay. The Board heard evidence that petitioner owes her creditors approximately $246,647.38. The Board's decision outlined four areas of concern. First, the Board heard testimony that petitioner had sold two dental chairs which she was leasing to Dr. Desjardins-King and that an attorney was currently attempting to recover the chairs. Petitioner had not indicated to Dr. Desjardins-King that she was only leasing the chairs at the time of the sale. Second, the Board heard testimony that petitioner is paying $1225 in rent and utility payments on behalf of her adult son, which they claim could have been applied to the debt with the Board. Third, petitioner had not listed her debt to the Board on her list of debts, which, "demonstrated to the Board that Dr. Nadeau holds the Board in low esteem and does not intend to place any priority to repayment of her ordered costs to the Board and thereby burdening other licensees." (Board Decision, March 6, 2009 at 4). Fourth, that petitioner's income could reasonably be expected to increase following completion of her probation.

The Board then voted to assess costs of $18,699.21, payable at a rate of 1% ($187) per month for the next twelve months at which time the Board would revisit the payment plan and review updated information. Petitioner has filed for review, requesting that this court vacate the decision of the Board and order that no costs be imposed against petitioner.

2

When the decision of an administrative agency is appealed pursuant to M.R. Civ. P. 80C, the court reviews the agency's decision directly for abuse of discretion, errors of law, or findings not supported by the evidence. *Centamore v. Dep't of Human Servs.*, 664 A.2d 369, 370 (Me. 1995). "An administrative decision will be sustained if, on the basis of the entire record before it, the agency could have fairly and reasonably found the facts as it did." *Seider v. Bd. of Exam'rs of Psychologists*, 2000 ME 206, ¶ 9, 762 A.2d 551, 555 (citing *CWCO, Inc. v. Superintendent of Ins.*, 1997 ME 226, ¶ 6, 703 A.2d 1258, 1261). The court will "not attempt to second-guess the agency on matters falling within its realm of expertise" and judicial review is limited to "determining whether the agency's conclusions are unreasonable, unjust or unlawful in light of the record." *Imagineering, Inc. v. Superintendent of Ins.*, 593 A.2d 1050, 1053 (Me. 1991). "Inconsistent evidence will not render an agency decision unsupported." *Seider*, 2000 ME 206, ¶ 9, 762 A.2d at 555. "The finding of fact is clearly erroneous if no record evidence exists to support it or if it is based on 'a clear misapprehension of the meaning of the evidence.'" *Street v. Bd. of Licensing of Auctioneers*, 2006 ME 6, ¶ 8, 889 A.2d 319, 321 (quoting *White v. Zela*, 1997 ME 8, ¶ 3, 687 A.2d 645, 646). The burden of proof rests with the party seeking to overturn the agency's decision, and that party must prove that no competent evidence supports the Board's decision. *Bischoff v. Bd. of Trs.*, 661 A.2d 167, 170 (Me. 1995).

Petitioner challenges the Board's decision on three grounds: (1) that the costs assessed by the Board are unreasonable, (2) that the Board did not adequately consider the financial hardship which will be imposed on petitioner, and (3) that the Board exhibited bias against petitioner.

The first issue is whether the costs themselves are reasonable. The Board is permitted by statute to assess actual expenses against a licensee upon finding a

3

violation. 10 M.R.S.A. § 8003-D. The statute further provides that "'[a]ctual expenses' include, but are not limited to, travel expenses and the proportionate part of the salaries and other expenses of investigators or inspectors, hourly costs of hearing officers, costs associated with record retrieval and the costs of transcribing or reproducing the administrative record." *Id.* Petitioner claims the actual costs assessed here are unreasonable because the court reporting and transcription fees were excessive,[1] the cost of the Board's expert, Dr. Seigel, was excessive, and that Board has never assessed costs approaching $18,000 in similar matters.[2]

First are the transcription costs. Petitioner's argument is that the fees themselves are excessive because the Board did not put its court reporting and transcription requirements to bid. These costs totaled $11,704.13. Of these costs, the Board assumed 50%, leaving petitioner responsible for $5,852.06. *Id.* The record reflects that the Board gave discussion to the reasonableness of the transcription costs and to what extent those should be passed on to the petitioner. The Board found that because the petitioner had no say in going to an adjudicatory hearing, the Board should assume at least some of those costs. Additionally, the record reflects that the Board had received three quotes regarding transcription. Considering these facts in conjunction with § 8003-D's plain language authorizing transcription costs, petitioner's allegation that the transcription costs are unreasonable is unsupported.

Next are the costs of the Board's expert, Dr. Siegel. Petitioner claims that imposing a cost of $930 was unreasonable because Dr. Seigel did not need to be present while lay witnesses testified. The Board, however, represented that it believed it was

---

[1] Petitioner also pointed out that the Board failed to make any adjustment for the costs stemming from an endodontics issue, as required by the court order, but did not raise that issue at either hearing.

[2] This issue was not raised at either hearing.

4

appropriate to have Dr. Siegel listen to the lay witnesses because "[the Board] did require additional consultation of the Board's choosing." Petitioner further suggested that "[i]t is not clear that the statute permits the assessment of this fee[.]" This argument seems baseless considering that the language states that actual expenses "include, *but are not limited to*" the costs enumerated in the statutes. 10 M.R.S.A. § 8003-D (emphasis added). The Board's analysis is reasonable.

Finally is the fact that the Board has never assessed costs approaching $18,000. As respondent points out, this issue was not raised at the hearing, and therefore is not considered by the court. *See New England Whitewater Ctr., Inc. v. Dep't of Inland Fisheries & Wildlife*, 550 A.2d 56 (Me. 1998) (holding that an issue not objected to at the administrative level is not properly preserved for review by the courts).

The second issue is whether the Board gave adequate consideration to the financial hardship that will be placed on petitioner by its decision. There are multiple arguments here, but the key issue is whether the Board was required to determine petitioner's ability to pay the entire amount based on her financial situation, or whether it was permitted to consider her future ability to pay and set a payment plan.

Respondent argues that it exercised discretion in making its determination because it heard evidence regarding petitioner's ability to pay and ordered petitioner to pay costs at a rate of 1% per month in light of that evidence with petitioner's financial situation to be reviewed one year hence. Petitioner then argues that the Board had improperly considered factors such as the Board's sources of income, the "area's of concern," outlined above, and the Board failed to explain how any of these factors along with petitioner's financial situation supported its determination that petitioner must pay the assessed costs, albeit in installments for the first twelve months.

5

The key case in this area is *Zegel v. Bd. of Social Worker Licensure*, 2004 ME 31, 843 A.2d 18. The petitioner in *Zegel* appealed from a decision that imposed costs without regard to her ability to repay those debts. *Id.* at ¶ 19, 843 A.2d at 23. The Court stated that "[w]e conclude, on these facts, that the Board exceeded the bounds of its discretion when it imposed the additional costs without making any inquiry into Zegel's ability to pay and declined to address her ability to pay . . . ." *Id.* In a separate part of that opinion, which discussed whether the Board adequately addressed why it chose the sanctions that it did, the court stated "[b]oth statute and case law require the Board to set out findings that justify its decision; we may not hypothesize about the Board's reasoning." *Id.* (citing 5 M.R.S.A. § 9061).

Here, the Superior Court ordered the Board to "[exercise] its discretion with regard to reasonable costs *based on petitioner's ability to pay.*" (emphasis added.) The Board then continued to discuss, in addition to petitioner's financial difficulties, that the payment of the Board's costs would help it continue to provide services, that it was troubled by the sale of the chairs, the support of petitioner's son, the fact that the Board was not listed as a creditor, and that petitioner's income was likely to increase. Inasmuch as the burden of proof rests on the petitioner to overturn the agency's decision, the credibility of the petitioner and the evidence that she presented is clearly at issue before the Board. Evidence of the sale of leased chairs, in which she did not enjoy title, is relevant as to her honesty and credibility. The fact that the list of debts presented by the petitioner to the Board did not include the payment of costs as previously assessed by the Board clearly demonstrated an attitude by the petitioner toward the agency responsible for determining her authority to practice dental medicine in the future. Most important, the analysis by the Board of the income producing potential of the petitioner is extremely important in light of its sanction

6

order, that is, that she was to be given a one-year period of minimum payments at the conclusion of which the Board would consider her financial situation at that time keeping in mind the Board's expertise in the area of economic circumstances of successful practicing dentists in the State of Maine. The Board comments with respect to its finding would reflect the burden on the Board to be conservative in its allowance to reduce the assessment of costs inasmuch as it is funded by the very profession which it regulates.

In examining the Board's decision to order the petitioner to pay the amount of $18,699.21 in payments of $187 (1/%) per month for a year the court examines the financial information presented to the Board for its consideration. The fundamental issue is whether or not it was reasonable for the Board to find an expectation by the petitioner to have disposable earning to meet the minimum sanction as imposed. Among other items of information, the Board was presented information that in the previous six months petitioner had paid $2600 as repayment to relatives and $1200 to "Nicholas." For monthly expenses she indicates that she pays $1225 a month for rent for an apartment that she has in Tampa, Florida, for a son, who is twenty-one years old, goes to college, and has a part-time job.[3] This amount is based upon $875 per month for rent for the son's apartment and $350 per month for his utilities. The apartment lease expired in December of 2008; the petitioner admitted that she voluntarily extended the lease so that her son could live there. It is not unreasonable for the Board to have considered the petitioner's displacement of priorities in suggesting that, rather than comply with the law requiring payment of costs to a licensing Board responsible for her ability to practice as a dentist in the State of Maine, she was instead paying the living expenses of a twenty-one year old adult son. Under such circumstances, the Board

---

[3] There is no evidence that the son is mentally or physically limited in any way.

clearly was satisfied that the amount of $187 per month was available from existing spendable income notwithstanding substantial debt.

As to the future earnings, it was noted that between the dates of August 5, 2008, and January 31, 2009, the petitioner's income was $44,346. The Board also deferred a final decision with respect to the method of payment of the cost for one year as she attempted to complete her probation and re-enter the full practice of dentistry, not an unreasonable method of considering the financial circumstances of Dr. Nadeau.

The third issue is whether petitioner was afforded a fair hearing. This issue does not appear to be properly preserved, because counsel did not object on the grounds of bias in this case. *See New England Whitewater*, 550 A.2d 56 (Me. 1998). The record does not reflect any objection that would put the Board on notice of a potential bias issue. In fact, at the conclusion of the proceedings, petitioner's counsel was asked whether he had "[a]ny concerns about this discussion[,]" and he replied that he would rest on what he had already stated.

Petitioner points the Court to *York Hosp. v. Dep't of Human Services*, 2005 ME 41, ¶ 20, 869 A.2d 729, 753, for the proposition that allegations of bias do not always need to be raised at the administrative level because bias is not always apparent until the agency issues its decision. Petitioner states that the decision, as a whole, reflects that bias unfairly tainted the Board's analysis. However, the "bias" petitioner points to in the decision would also have been present at the hearing. Accordingly, this argument is not properly preserved.

For the reasons herein stated the entry will be:

The decision of the Maine Board of Dental Examiners *in re Denise Nadeau, D.S.S.* complaint number 06-20, 07-10, and 07-126 dated March 6, 2009 is AFFIRMED.

DATED: /2 - 2⁴- c⁹

Donald H. Marden
Justice, Superior Court

9

Date Filed __4/15/09__ __Kennebec__ Docket No. __AP-09-18__

County

Action __Petition For Review__

80C

# J. JABAR

Denise Nadeau, D.D.S.                    vs.        Maine Board of Dental Examiners

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Mark V. Franco, Esq.<br>PO Box 4630<br>Portland, ME  04112 | Dennis Smith, AAG<br>6 State House Station<br>Augusta Maine 04333-0006 |

| Date of Entry | |
|---|---|
| 4/16/09 | Petition For Review Of Final Agency Action, filed 4/15/09.  s/Franco, Esq. |
| 4/16/09 | Copy of Petition; Exhibit A, filed.  s/Franco, Esq. |
| 4/21/09 | Appearance and Statement of Position Pursuant to 5 M.R.S.A §11005, filed. s/Smith, AAG |
| 5/11/09 | Certification of Administrative Record, filed. s/Smith, AAG **(in vault)**<br>**NOTICE AND BRIEFING SCHEDULE ISSUED**<br>Copies mailed to attys. of record. |
| 6/19/09 | Brief of the Petitioner, filed. s/Franco, Esq. |
| 7/10/09 | Brief of Respondent, filed. s/Smith, AAG |
| 7/24/09 | Reply Brief of the Petitioner, filed. s/Franco, Esq. |
| | Notice of setting for ___9/15/09___<br>sent to attorneys of record. |
| 9/15/09 | Hearing held with the Hon. Justice Donald Marden, presiding.<br>Mark Franco, Esq. for the Petitioner and Dennis Smith, AAG for the Respondent.<br>Oral arguments made to the court. Court to take matter under advisement. |
| 12/24/09 | ORDER, Marden, J. (12/24/09)<br>The decision of the Maine Board of Dental Examiners in re Denise Nadeau, D.S.S. complaint number 06-20, 07-10, and 07-126 dated March 6, 2009 is AFFIRMED.<br>Copies to attys. of record.<br>Copies to repositories |